UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CIVIL DIVISION

| | |
|---|---|
| ELIZABETH K ATWOOD | } |
| A/K/A ELIZABETH KING, | } |
| Plaintiff, | } Civil Action, File No. |
| v | } 2:14-cv-02973-JFB-AKT |
| | } |
| COHEN & SLAMOWITZ, LLP, | } |
| MITCHELL SELIP, MITCHELL G. SLAMOWITZ, | } |
| AND DAVID A. COHEN, | } |
| Defendants. | } |

## OPPOSITION TO MOTION TO DISMISS

Elizabeth K. Atwood, by and through her attorneys, Mitchell L. Pashkin and Jesse Langel respectfully submit this Opposition to Defendants' Motion To Dismiss.

## DISCLOSURE OF ELIZABETH K. ATWOOD'S SOCIAL SECURITY NUMBER

Defendants' set forth just one basis for their motion to dismiss the causes of action related to the disclosure of Elizabeth K. Atwood's social security number. Defendants claim that all but the last four digits properly were redacted. They have submitted to this court for an in-camera review a document claimed to be the copy of the document filed in the State Action. This document is not the same as the copy Defendants served on Elizabeth K. Atwood. Elizabeth K. Atwood will submit to this court for an in-camera review the copy served on her. As this court will see, Elizabeth K. Atwood's social security number is not properly redacted on the copy Defendants served on Elizabeth K. Atwood. The attempted redaction still allows anyone looking at this document to see Elizabeth K. Atwood's entire social security number. Based on this, there is no basis to grant Defendants' motion to dismiss the causes of action related to the disclosure of Elizabeth K. Atwood's social security number.

1

**APRIL 22, 2013 ATTEMPTED TELEPHONE CALL**

Defendants set forth just one basis for their motion to dismiss the causes of action related to the occurrence of this telephone call. Defendants assert the expiration of the statute of limitations prior to the commencement of this lawsuit. Defendants' argument ignores the existence of the discovery rule as determining the date on which the FDCPA's one year statute of limitations commences and misrepresents and ignores the law regarding equitable tolling.

The existence of the discovery rule in the Second Circuit and specifically the Eastern District is discussed below. However, a case almost directly on point is the case of <u>Tate v. Bennett Law, PLLC</u> (D. Or., 2013) 3:12-CV-00590-SU. <u>Tate</u> also involved an attempted telephone call that was made over a year before the FDCPA lawsuit.

In <u>Tate</u>, on April 4, 2012, Plaintiff James Tate filed an FDCPA complaint based on voice mail messages left on an answering machine shared by he and his wife, Janice Tate. The Tates had believed that the voice mail messages involved an attempt to collect a debt from him rather than her. On November 15, 2012, during the deposition of Defendant's Rule 30(b)(6) witness, the Tates discovered that the voice mail messages actually related to an attempt to collect a debt from her. On November 15, 2012, Plaintiff filed a motion to amend the complaint to add his wife, Janice Tate, as a plaintiff based on the voicemail messages. Based purely on the date the calls occurred, the limitations period for Janice Tate to bring claims against Defendant under the FDCPA based on the voicemail messages had passed; and the court had to decide whether or not Janice Tate still could be added as a Plaintiff.

The court in <u>Tate</u> first found that Janice Tate could not have known the voice mail messages related to her until the deposition of Defendant's Rule 30(b)(6) witness. The court relying on <u>Mangum v. Action Collection Service, Inc.</u>, 575 F.3d 935 (9th Cir., 2009) then held that since the

2

amendment was sought well within one year of Plaintiff's discovery that the alleged violations applied to Janice Tate, the statute of limitations was not a bar to adding Janice Tate as a plaintiff.

In this case, the Amended Complaint alleges the inability of Elizabeth K. Atwood to have discovered the existence of the attempted auto-dialer call to a number believed to belong to her employer until Defendants turned over their account notes after the start of this lawsuit. Defendants' motion does not dispute these allegations; and these allegations must be taken as true for the purposes of this motion. For the same reasons set forth in Tate, the statute of limitations does not bar the causes of action based on the April 22, 2013 attempted auto-dialer call which Elizabeth K. Atwood did not and could not have discovered until Defendants turned over their account notes after the start of this lawsuit.

In the Eastern District of New York, two recent cases, including one from the end of July 2014, discussed the existence of the discovery rule in determining the start of the FDCPA's one year statute of limitations. In Kearny v Cavalry Portfolio, 1:12-cv-00860-DLI-RML (EDNY July 31, 2014), the court found the statute of limitations tolled by the discovery rule:

> "Plaintiffs Rodriguez and Goldstein allege that they never were served properly in the initial suits. (Am. Compl. ¶¶ 31-33, 36-41, 93-99.) Rodriguez claims she first became aware of the underlying suit on July 15, 2011, when she was denied housing, whereas Goldstein claims to have first received notice through the income execution served on her employer on July 22, 2011. (Am. Compl. ¶¶ 37, 90; Pl.s' Opp. Mem. at 19.) The legitimacy of Rodriguez and Goldstein's assertions are supported by civil court findings that default judgments were improperly entered against both Rodriguez and Goldstein in the underlying state lawsuits against them. Bronx Civil Court Judge Lizbeth Gonzalez vacated the default judgment against Rodriguez on August 3, Case 1:12-cv-00860-DLI-RML Document 73 Filed 07/31/14 Page 9 of 19 PageID #: 152410 2011, and directed Rodriguez to file an answer, which Rodriguez did later the same day. (Am. Compl. ¶ 41.) Goldstein filed an order to show cause why the default judgment should not be vacated for failure to serve, and to dismiss the action on November 17, 2011, which was granted and eventually resulted in the dismissal of CPS's suit. (Id. ¶¶ 93, 98-99.) Based on these facts, the Court finds the tolling of the statute of limitations is appropriate as to Rodriguez and Goldstein. Based upon

3

the dates that they first became aware of the underlying suits, Rodriguez and Goldstein's current FDCPA claims fall within the one-year window."

In <u>Fritz v. Resurgent Capital Servs., LP</u>, Case No. 11-CV-3300 (FB) (VVP) (E.D.N.Y., 2013), the court discussed the applicability of both the discovery rule and the equitable tolling rule to the FDCPA case before it.  The court explained the following element of both rules:

> "Both doctrines require the exercise of due diligence. *See Guilbert v. Gardner,* 480 F.3d 140, 149 (2d Cir. 2007) ("[Under the discovery rule,] a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." (internal quotation marks omitted)); *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir. 1996) ("Equitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled.")."

While the court in <u>Fritz</u> found that Fritz had not exercised due diligence, there is nothing that Elizabeth Atwood could have done to discover the April 22, 2013 attempted auto-dialer call prior to the time Defendants turned over their account notes after the start of this lawsuit.

See also <u>Mascoll v. Strumpf</u>, 2006 WL 2795175, 05-CV-667 (SLT) (E.D.N.Y. Sept. 25, 2006):

> "Defendants assume that whatever FDCPA violations plaintiff is alleging must have occurred *prior* to their filing of the Nassau County action in October 2003, and reason that "the statute of limitations expired in October of 2004," at the latest.  Def. Memo at 8.  Plaintiff further implies that the cause of action did not accrue until May 5, 2004 — the day on which she first learned that defendants had prosecuted the Nassau County action and had thereby "abused" the "legal process."  [T]he complaint can be liberally construed as asserting that Defendants violated the FDCPA by persisting in efforts to collect on a debt which they knew or, in the exercise of due diligence, should have known that BOA and U.S. Equities had no right to collect. Since plaintiff alleges that she did not learn of these efforts until May 5, 2004, and since some of Defendants' attempts to execute on that debt are alleged to have occurred on April 28 and June 2, 2004, this Court cannot determine at this juncture that plaintiff's FDCPA claims, filed on February 3, 2005, are time-barred. Accordingly, that portion of Defendants' motion which seeks to dismiss plaintiff's FDCPA claims is denied."

While the undersigned are not aware of any case from the Second Circuit discussing the discovery rule in the context of an FDCPA case, the Second Circuit has stated the following in

4

regard to the discovery rule in federal cases:  "A federal court generally employs the "discovery rule," under which "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007) (This case was cited as support by the court in this district in the FDCPA case of Fritz v. Resurgent Capital Servs., LP, Case No. 11-CV-3300 (FB) (VVP) (E.D.N.Y., 2013).).  The Second Circuit's discussion of the existence of the discovery rule in federal litigation is consistent with and often identical to the reasoning of the Ninth, Fifth and Fourth Circuit Court of Appeals in cases issued by them finding the discovery rule applicable in FDCPA cases.

In the Ninth Circuit case of Mangum v. Action Collection Service, Inc., 575 F.3d 935 (9th Cir., 2009), the FDCPA violation occurred on December 8, 2004 but Mangum did not discover the violation until December 15, 2004.  The Ninth Circuit held that based on the discovery rule, Mangum's FDCPA lawsuit filed on December 14, 2005 was timely filed.

More recently in the Ninth Circuit, the district court held in Tourgeman v. Collins Fin. Serv. Inc. (S.D. Cal., 2011) that the statute of limitations was tolled by the discovery rule.  In Tourgeman v. Collins Fin. Serv. Inc. (S.D. Cal., 2011), CASE NO. 08-CV-1392 JLS (NLS), "[o]n July 31, 2008, Plaintiff filed the present action against, inter alia, Collins Financial, Nelson & Kennard, and DFS alleging violations of the FDCPA."  The FDCPA violations concerned letters sent to Plaintiff at various times throughout 2006 at his father's house where Plaintiff did not reside.  ["Based on the facts as Plaintiff alleges them, the first time that he reasonably could have become aware of the allegedly false and misleading representations in Defendants' letters was when his father was served with summons and complaint in the state court lawsuit in October 2007. At that point, Plaintiff was on notice that Defendants were attempting to collect a debt that Plaintiff purportedly owed to AIB, and an investigation likely would have revealed—and in fact did reveal—Defendants' letters.

5

Accordingly, Plaintiff's claims based on the letters, as alleged in the TAC, were timely when filed in July 2008."]  The district court's decision was upheld by the Ninth Circuit on June 25, 2014.

The Fourth Circuit in the case of <u>Lembach v. Bierman</u> NO. 12-1723NO. 12-1746 (4th Cir., 2013) held as follows:

> "The discovery rule provides that a limitations period does not begin to run until the plaintiff knows or has reason to know of the injury that is the basis of the lawsuit. <u>Mangum v. Action Collection Serv., Inc., 575 F.3d 935</u>, 940 (9th Cir. 2009).  The only circuit to address whether to apply the discovery rule to an FDCPA action has concluded that it should apply. <u>See</u> <u>id.</u> … We see no reason not to apply the discovery rule to this case. The Lembachs had no way of discovering the alleged violation until they actually saw the fraudulent signatures on the docketing material. … We hold that the Lembachs' filing was timely because they filed within one year of the time that they discovered (or could have discovered) the fraud."

The Fifth Circuit in the case of <u>Serna v. Law Office of Joseph Onwuteaka, P.C.</u>, 732 F.3d 440 (5th. Cir., 2013) relied on the history and remedial purpose of the FDCPA to determine that the statute of limitations does not start to run until the consumer finds out about the violation. In particular the Fifth Circuit stated that "[i]mportantly, Congress . . . has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and *clearly intended the FDCPA to have a broad remedial scope*." *Hamilton v.United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002) (emphasis added).  The court then went on to state the following:

> "In adopting this approach, we are guided by the principle that a claim does not accrue for purposes of a statute of limitations until a plaintiff experiences an actual injury. *See Frame v. City of Arlington,* 657 F.3d 215, 238 (5th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 1561 (2012). When a defendant's wrongful act does not coincide with the plaintiff's injury, the statute of limitations does not begin to run until the plaintiff is harmed. *Frame*, 657 F.3d at 238 (explaining that a plaintiff's disability claim accrued not when the defendant built an inaccessible sidewalk, but when the plaintiff became disabled and encountered the harm of not being able to use the sidewalk); *see also Piotrowski v. City of Houston*, 237 F.3d

6

567, 576 (5th Cir. 2001)."

**DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENTS**

Defendants' motion to dismiss cites the case of <u>Lautman v 2800 Coyle St. Owners Corp.</u> 13-CV-967 (EDNY 2013) to support its one argument regarding the April 22, 2013 attempted auto-dialer call.  Their argument is that "FDCPA claims must be brought 'within one year from the date on which the violation occurs'"; and since April 22, 2013 occurred prior to one year before the filing of this lawsuit, any claims based on the April 22, 2013 attempted auto-dialer call are barred by the one year statute of limitations.

This argument ignores two essential and dispositive items:  (1) the facts alleged in the Amended Complaint that Elizabeth Atwood did not and could not have known about this call prior to the time Defendants turned over their account notes after the start of this lawsuit; and (2) the aforementioned discovery rule.  In fact, the <u>Lautman</u> case cited by Defendants actually supports Elizabeth Atwood's right to have this lawsuit include causes of action based on this April 22, 2013 call since Elizabeth Atwood did not and could not have known about this call prior to the time Defendants turned over their account notes after the start of this lawsuit.

The specific question before the <u>Lautman</u> court was as follows: "Thus, the court must determine whether, where a plaintiff's FDCPA claim is based on the defendant's bringing underlying proceedings against the plaintiff, the one-year statute of limitations begins to run at the time of filing or at the time of service".   In finding that it began to run at the time of service, the court commented as follows:  "These courts prefer the date of service over the date of filing from a 'practical and fairness-oriented standpoint' because the statute of limitations should 'not begin to run until the plaintiff knew or should have known of the defendant's violation of the Act'…'Unless a statute says otherwise, federal courts will not imply a rule under which the statute of limitations runs even if the

7

prospective plaintiff has no reason to know that he might have a claim against another party' ".  This is no different from the principles underlying the discovery rule in the aforementioned cases.

Defendants next contest the application of equitable tolling to the April 22, 2013 auto-dialer attempted telephone call.  Without any supporting case law, Defendants claim that equitable tolling requires a "*misrepresentation* that creates reliance".  The undersigned are not aware of any case that holds that equitable tolling requires a "*misrepresentation* that creates reliance".

At the end of July 2014, the court in Kearny v Cavalry Portfolio, 1:12-cv-00860-DLI-RML (EDNY July 31, 2014) reiterated the law regarding equitable tolling:

> "FDCPA claims are subject to equitable tolling where a plaintiff establishes:
> "(1) the defendant concealed from him the existence of his cause of action;
> (2) he remained in ignorance of that cause of action until some length of time
> within the statutory period before commencement of his action; and (3) his
> continuing ignorance was not attributable to a lack of diligence on his part."
> *Sykes*, 757 F. Supp. 2d at 422 (citing *N.Y. v. Hendrickson Bros., Inc*, 840 F.
> 2d 1065, 1083 (2d Cir. 1988)). Equitable tolling is available where a party
> does not discover the action exists until after default judgment is entered due
> to sewer service. *Sykes*, 757 F. Supp. 2d at 422; *see also Bailey v. Glover*, 88
> U.S. 342, 349-50 (1874) ("To hold that by concealing a fraud, or by
> committing a fraud in a manner that it concealed itself until such time as the
> party committing the fraud could plead the statute of limitations to protect it,
> is to make the law which was designed to prevent fraud the means by which
> it is made successful and secure")."

The element alleged to be required by Defendants without any supporting case law, "*misrepresentation* that creates reliance", does not appear above.  Defendants possibly may be referring to the concealment element of equitable estoppel.  However, Plaintiff is not alleging concealment by Defendants and "[t]he concealment element is met when plaintiffs show either that the affirmative acts of defendant prevented discovery of plaintiffs' claim or that the wrong itself was self-concealing. New York v. Hendrickson Bros, Inc., 840 F.2d at 1083."  Coble v Cohen & Slamowitz, LLP, 824 F.Supp.2d 568 (S.D.N.Y., 2011).  Since the April 22, 2013 telephone call did

8

not result in a message and was made by an auto-dialer system to a number possibly belonging to Elizabeth Atwood's employer, this telephone call was self-concealing; therefore, the concealment element of equitable tolling is met.  Compliance with the second and third element of equitable tolling has been explained above and is not contested by Defendants.

## ACTIONS OR OMISSIONS "IN CONNECTION WITH AN ATTEMPT TO COLLECT A DEBT"/ATTEMPTS TO COLLECT A DEBT

Defendants argue that none of their actions or omissions after the expiration of the statute of limitations in the State Action were "in connection with an attempt to collect a debt" or were an "attempt to collect a debt".

Defendants' motion specifically addresses the Second Cause of Action in the Amended Complaint; but their motion addresses only one part of the Second Cause of Action.  Their motion only addresses the portion of the Second Cause of Action dealing with their actual written response to the Order To Show Cause; but the Second Cause of Action alleges acts and omissions by Defendants beyond and separate from the actual written response to the Order To Show Cause.

Defendants' motion ignores the allegations in the Second Cause of Action in paragraphs 68 and 69.  These paragraphs contain allegations regarding Defendants' preparation for the February 18, 2014 court appearance, specifically "the preparation of a summary of the permissible settlement parameters." (par. 68), the appearance in court on February 18, 2014 by one of Defendants' attorneys on behalf of their client in opposition to the Order To Show Cause (par. 69), Defendants' attorney's participation in a conference the court's law clerk and Elizabeth Atwood as part of the February 18, 2014 court appearance (par. 69), and during this conference Defendants' attorney's continued opposition to the order To Show Cause and his continued denial of Defendants' client being responsible for the restraint on her bank accounts (par. 69).  Defendants' motion most

9

importantly ignores the fact that the above actions occurred as part of an ongoing debt collection lawsuit commenced by Defendants on behalf of their client for the sole purpose of collecting a debt from Elizabeth Atwood.

Since Defendants have not contested the allegations contained in paragraphs 68 and 69, Defendants have waived their right to challenge these portions of the Second Cause of Action.

**CONTINUATION OF THE DEBT COLLECTION LAWSUIT**

The Amended Complaint alleges that the debt collection lawsuit was dismissed by operation of law pursuant to NY CPLR 3215 and could not be recommenced based on the expiration of the statute of limitations.  The Amended Complaint also alleges in the Second Cause of Action and Eighth Cause of Action that both Defendants' actual written response to the Order To Show Cause and Defendants' various omissions resulted in the continuation of the debt collection lawsuit and the continued restraint of Atwood's bank accounts.  For example, paragraph 67 of the Amended Complaint reads in part as follows:  "it failed to inform the court that the case was dismissed pursuant to CPLR 3215; it failed to inform the court that the statute of limitations had expired; it resulted in the plaintiff in this action having to appear in court with an attorney representing Portfolio Recovery Associates, LLC.; and it resulted in the continued restraint of Atwood's bank accounts."

Defendants' motion to dismiss does not dispute or address the allegation that their response resulted in the continued restraint of Atwood's bank accounts.  Defendants' motion to dismiss does not address any of the above alleged omissions which resulted in the continuation of the debt collection lawsuit.

The omissions by Defendants in regard to the debt collection lawsuit against Elizabeth Atwood are no different and perhaps even worse than the omissions which the Sixth Circuit recently

found to have violated the FDCPA in the case of <u>Currier v. First Resolution Inv. Corp.</u>, No. 13-5943

(6th Cir., 2014).          In <u>Currier</u>, the Sixth Circuit set forth the following dispositive facts:

> "On October 8, First Resolution filed a judgment lien against Currier's home. This lien was invalid because, under Kentucky law, a judgment lien can arise only from a final judgment. *See* Ky. Rev. Stat. Ann. § 426.720(1); *Laferty v. Wickes Lumber Co.*, 708 S.W.2d 107, 108 (Ky. Ct. App. 1986) (noting that failure to strictly follow statutory requirements renders a lien invalid). A Kentucky judge held a hearing on October 29 and ruled from the bench that it would grant Currier's motion to vacate the default judgment. Although the lien had been invalid since October 5 and First Resolution knew the underlying judgment would be entirely vacated, First Resolution did not release the lien until November 5."

> "Drawing all reasonable inferences from the facts alleged, First Resolution filed an invalid judgment lien on October 8, when it should have known that Currier had filed a meritorious motion to vacate the default judgment on October 5, three days earlier. Though First Resolution admittedly knew of Currier's motion to vacate later on October 8, it did nothing to release the lien or correct the error. First Resolution admitted at oral argument that good and proper practice would be to correct such errors, but offered no explanation for its failure to do so. Several weeks later, when the state judge ruled from the bench that the judgment would be vacated, First Resolution *still* failed to release it. It had no arguable basis for holding a judgment lien at that point in time. First Resolution did not voluntarily release the invalid lien until seven days later."

Based on these facts, the court concluded that the "filing and failing to release an invalid judgment lien against a debtor's home while the related state court collection action remains pending falls within the broad scope of practices prohibited by the FDCPA."

In Elizabeth Atwood's case before this court, despite getting its client to allow them to reopen the file in their office and defend against the Order To Show Cause, Defendants failed to take steps to have its client or the client's other attorney in this case vacate the improper and invalid lien on Elizabeth Atwood's accounts which was placed there as a result of a judgment that had been vacated several years ago.  Not only did they file a response to the Order To Show Cause which attempted to shift the burden back to Elizabeth Atwood to prove that it was their client restraining

her accounts, which it was, they did nothing for the three weeks between the time of their response and the court appearance and then at the court appearance still did nothing other than rely on its response.  For the reasons explained in <u>Currier v. First Resolution Inv. Corp.</u>, No. 13-5943 (6th Cir., 2014), these omissions violated the FDCPA.

In addition, while in this Sixth Circuit case the defendants had a right to continue the debt collection lawsuit despite the invalidity of the judgment lien, Defendants in the case at bar had no right to continue the debt collection lawsuit against Elizabeth Atwood.  Yet, as alleged in the Amended Complaint, Defendants not only allowed the debt collection lawsuit to continue but forced Elizabeth Atwood to appear in court regarding the debt collection lawsuit and sent an attorney to appear in court regarding the debt collection lawsuit armed with settlement parameters.

## RESPONSE TO ORDER TO SHOW CAUSE "IN CONNECTION WITH THE COLLECTIONOF ANY DEBT"

Defendants argue that their response to Elizabeth Atwood's Order To Show Cause was not an "attempt to collect a debt" and was not "in connection with an attempt to collect a debt".  They argue this based on their position that their response to the Order To Show Cause does not ask for or demand the payment of money and was a required action taken in response to an action by Plaintiff.

In <u>Strouse v. Enhanced Recovery Co.</u> (E.D. Pa., 2013) CIVIL ACTION NO. 12-4417, the defendant argued that the fraud package was not "in connection with the collection of any debt" since it sent the fraud package in response to Plaintiff's request in an attempt to complete a fraud investigation.  The court rejected this argument.

In <u>Strouse</u>, Defendant mailed a "Fraud Package" to the Plaintiff requesting that Plaintiff prove she was not the holder of the account in interest. On the first page, the Fraud Package stated: "This is a debt collector attempting to collect a debt. Any information obtained will be used for that

12

purpose."  Defendant claimed that it sent the Fraud Packet "in response to Plaintiff's assertion that she did not own the Account in question" and that the Fraud Packet was part of "an attempt to complete an investigation into Plaintiff's claim that the debt was disputed.".

In rejecting the defendant's argument that it merely was responding to the plaintiff, the court first cited the Third Circuit in holding that "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor." Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006).  The court then explained as follows:  "The Third Circuit has listed several factors as pertinent in determining whether a communication is "in connection with the collection of any debt." These include (1) whether the communication "demand[s] the personal payment of money"; (2) whether the communication "suggest[s] that if the recipient did not have sufficient funds available, payment could be made in full under an installment plan"; and (3) generally, whether the communication could be interpreted by the least sophisticated debtor as an attempt to collect a debt. Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 233-34 (3d Cir. 2005) (citing Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 396-97, 400 (3d Cir. 2000) )."

After setting forth the above law, the court explained why the Fraud Package was "in connection with the collection of any debt":

> "….the Fraud Package—are in connection with the collection of a debt. ... The Fraud Package sent to Plaintiff's parents' residence is clearly such a communication.  The third page, under the heading "Federal Notice," states: "This is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.". Even the least sophisticated debtor could infer intent to collect a debt from this language."

See also McLaughlin v Phelan, Hallian & Schmieg, LLP,  Nos. 13-2015, 13-3679, & 13-3712 (3rd Cir., June 26, 2014) (rejected a defense that a letter did not constitute "debt collection activity"

13

subject to the FDCPA because it "made no demand for payment, contained no suggestion that [McLaughlin] settle the underlying debt, nor enter into a payment plan.").

A recent case out of this district also specifically counters and defeats Defendants' argument that their response to Elizabeth Atwood's Order To Show Cause was not "in connection with the collection of any debt" merely because their response to the order to show cause does not ask for or demand the payment of money and was a required action taken in response to an action by Plaintiff. The case is Tocco v Real Time Resolutions, Inc. 14cv810 (August 2014, SDNY, Hon. William H. Pauley, III).

The court in Tocco had to decide whether or not a letter from Real Time was an initial communication. As many courts do in decisions interpreting the FDCPA, the court in Tocco started its analysis by setting forth the following quote from a recent Second Circuit case: "Because the FDCPA is remedial in nature its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated". Vincent v The Money Store (2d Cir. 2013) 736 F.3d 88, 98.

Real Time argued that its letter was not "in connection with the collection of any debt" since it was informational only, was required to be sent pursuant to RESPA and did not explicitly demand payment. Judge Pauley rejected these arguments and rejected what it saw as a distinction found by other courts, including one from the Western District of New York, between "informational letters and letters attempting to collect on a debt". The court in Tocco found that a letter still was "in connection with the collection of any debt" even though the letter was required to be sent pursuant to RESPA and did not explicitly demand payment. The Tocco court based its decision on case law from both the Second Circuit and the Seventh Circuit.

First, the Tocco court adopted the rational of the Seventh Circuit in Gburek v Litton Loan

14

Servicing, LP, 614 F.3d 380, 385 (7th Cir. 2010) that "the absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made "in connection with the collection of any debt".  Regarding the Second Circuit, the court found that although the Second Circuit had not weighed in on the exact question under the FDCPA, it still should look to and rely on the Second Circuit's discussion of the phrase "in connection with" in another case.  The FDCPA itself of course does not define "in connection with the collection of any debt" or even "in connection with".

The Tocco court found that in Empire HealthChoice Assur., Inc. v McVeigh, 396 F.3d 136, 157 (2d Cir. 2005), the Second Circuit held that "in connect with" is synonymous with the phrases "related to", "associated with", and "with respect to".  Based on the Empire decision, the Tocco court found that "in connection with" is expansive.  Empire HealthChoice Assur., Inc. v McVeigh, 396 F.3d 136, 157 (2d Cir. 2005) was affirmed by the United States Supreme Court at 126 S. Ct. 2121 (2006), 126 S.Ct. 2121, 165 L.Ed 2d 131, 547 US 677 (2006).  In 2013, another court in this district also discussed the meaning of the phrase "in connection with".  In Headley-Ombler v. Holder (E.D.N.Y., 2013), 12-CV-2631 (WFK) (LB), the court explained the following in discussing the meaning of in connection with in Section 1503(a) of Title 8:

> Section 1503(a) does not define the phrases "arose," "by reason of," or "in connection with." Where there is no statutory definition of a term, the Court must "give it its ordinary meaning." (citation omitted). …To "arise" is defined as "to come into being," "to come about," "to become apparent in such a way as to demand attention," "to come into being or notice." (citations omitted).  The phrase "in connection with," by contrast, has a broader meaning and does not imply a causal connection. *Empire HealthChoice Assur. Inc. v. McVeigh,* 396 F.3d 136, 157 (2d Cir. 2005); *see also United States v. honey,* 219 F.3d 281, 284 (3d Cir. 2000) ("in connection with" denotes a "wide range of relationships"); *United States v. Wyatt,* 102 F.3d 241, 247 (7th Cir. 1996) ("the meaning of the phrase 'in connection with' should be construed expansively"); *United States v. Thompson,* 32 F.3d 1, 7 (1st Cir. 1994) ("[T]he phrase 'in connection with' should be interpreted broadly . . . .").

Finally, although not the only factor, one aspect of Real Time's letter discussed by the court in <u>Tocco</u> was the inclusion in the letter of the language "this is an attempt to collect on a debt and any information obtained will be used for that purpose.  See also <u>McLaughlin v Phelan, Hallian & Schmieg, LLP</u>,  Nos. 13-2015, 13-3679, & 13-3712 (3rd Cir., June 26, 2014) ("The Letter states that PHS is a "debt collector attempting to collect a debt" and that information PHS obtains "may be used for that purpose," namely to collect a debt.").

In the case at bar, Defendants' motion argues that "[f]ar from being an attempt to collect a debt, the response was limited to providing a copy of the November 13, 2006 letter from C&S…." The November 13, 2006 letter was annexed to the response to the Order To Show Cause sent to Elizabeth Atwood; and as the court can see for itself, this November 13, 2006 letter, just like the letter in <u>Tocco</u> and <u>Strouse</u> contains in capital bold letters the language "**THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**"

This language in the November 13, 2006 letter made a part of the response is another reason the response is an action "in connection with the collection of any debt".  The is especially true based on the following facts:

(1)     the November 13, 2006 letter containing the debt collection lawsuit index number which matched the index number in the caption of the response,
(2)     the response was part of a pending debt collection lawsuit,
(3)     the response stated that Defendants were the attorneys for Portfolio Recovery Associates,
(4)     their response specifically stated that if Elizabeth Atwood shows that their client actually is the one restraining her accounts then their client will release her accounts thereby inducing Elizabeth Atwood to contact them, and
(5)     based on the response and the continued restraint of her accounts, Elizabeth Atwood knew after reading the response that her choice was to contact Defendants to prove its

16

client was the one restraining her accounts or to go to court and appear in the debt collection lawsuit to argue with Defendants and prove to the judge that Defendants' client actually was the one improperly restraining her accounts.  See Simon v. FIA Card Servs., N.A., 732 F.3d 259, 265 (3d Cir. 2013) (Indeed, communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity.).

These five facts along with the above language require the conclusion that the response was "in connection with the collection of any debt".

This conclusion is consistent with the fact that "the FDCPA is remedial in nature [and therefore] its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated", is consistent with the words "in connection with" being expansive, and is consistent with lender-debtor communications potentially giving rise to claims under the FDCPA being analyzed from the perspective of the least sophisticated debtor.  Tocco v Real Time Resolutions, Inc. 14cv810 (August 2014, SDNY, Hon. William H. Pauley, III); Strouse v. Enhanced Recovery Co. (E.D. Pa., 2013) CIVIL ACTION NO. 12-4417; Vincent v The Money Store (2d Cir. 2013) 736 F.3d 88, 98; Empire HealthChoice Assur., Inc. v McVeigh, 396 F.3d 136, 157 (2d Cir. 2005), affirmed 126 S. Ct. 2121 (2006), 126 S.Ct. 2121, 165 L.Ed 2d 131, 547 US 677 (2006); and Gburek v Litton Loan Servicing, LP, 614 F.3d 380, 385 (7th Cir. 2010).

Defendants cite the case of Boyd v J.E. Robert Co., 05-CV-2455 (KAM)(RER) (EDNY 2012) as supporting their argument and argue that Boyd "specifically found that activities that do not seek monetary payment are not 'collection activities'".  However, by picking this one sentence out of an entire paragraph from the court's decision in Boyd and not explaining the questions actually decided by Boyd, Defendants misrepresent and incorrectly argue that this one sentence establishes that Defendants' response to the order to show cause was not "in connection with the collection of any debt" simply because it was a response to the order to show case and did not demand or seek

17

payment.

Fortunately for Plaintiff and probably unfortunately for Defendants, after Defendants submitted their motion to dismiss, the second Circuit issued its decision in the appeal of the Boyd case.  The Second Circuit on August 27, 2014 affirmed the district court's decision and explained the actual findings of the district court which it was affirming:  "In an October 2, 2012 order, the District Court granted summary judgment for defendants on the basis that the FDCPA did not govern the foreclosure actions.  Specifically, it held that: (1) the liens in question did not constitute "debt" within the meaning of the FDCPA; and (2) the FDCPA does not apply to the enforcement of security interests against property only."  The Second Circuit's explanation of the findings of the court in Boyd contradicts Defendants' characterization of the meaning of Boyd.  While Boyd may have found that that "activities that do not seek monetary payment are not 'collection activities'", this finding was in the context of legal actions concerning enforcement of security interests against property only."  The actual relevant holdings or findings of the court in Boyd are as follows:

> "Notably, none of the foreclosure actions sought monetary relief against any individual and instead sought the foreclosure and sale of the relevant property to recover the amounts due under the Tax Liens. Further, none of the foreclosure complaints sought a deficiency, if necessary, against any individual."

> "Accordingly, because the judicial foreclosures against the Jones and Boyd Properties did not seek monetary judgments against individual debtors, those foreclosures actions, including Defendants' responses to Plaintiffs' payoff inquiries, are not debt collection activities under §§ 1692e and 1692f of the FDCPA."

The ruling in Boyd is completely inapplicable to the case at hand where the response at issue was a part of and occurred in a legal proceeding instituted by Defendants for only one purpose-to obtain payment from Elizabeth Atwood.

Defendants also set forth the following quote from Glazer v. Chase Home Fin. LLC, 704

F.3d 453 (6th Cir., 2013) in support of their argument: "Thus, if a purpose of an activity taken in relation to a debt is to "obtain payment" of the debt, the activity is properly considered debt collection."  However, by picking this one sentence out of an entire paragraph from the court's decision in <u>Glazer</u> and not explaining the question actually decided by <u>Glazer</u>, Defendants misrepresent and incorrectly argue that this one sentence establishes that Defendants' response to the order to show cause was not "in connection with the collection of any debt" simply because it was a response to the order to show case and did not demand or seek payment.

A reading of <u>Glazer</u> reveals that the question confronting the court in <u>Glazer</u> is whether or not a foreclosure action can constitute "debt collection under the Act".  The sentence quoted by Defendants is a small part of the below paragraph:

> "Furthermore, in the words of one law dictionary: "To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings." *Black's Law Dictionary* 263 (6th ed.1990). The Supreme Court relied on this passage when it declared the following in a case concerning the Act's definition of "debt collector": "In ordinary English, a lawyer who regularly tries *to obtain payment* of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." *Heintz,* 514 U.S. at 294, 115 S.Ct. 1489 (emphasis added). Thus, if a purpose of an activity taken in relation to a debt is to "obtain payment" of the debt, the activity is properly considered debt collection. Nothing in this approach prevents mortgage foreclosure activity from constituting debt collection under the Act."

This paragraph along with a reading of the entire case reveals that the <u>Glazer</u> court determined that since mortgage foreclosure occurs as part of a legal proceeding and legal proceedings are a means employed to collect debts then mortgage foreclosure can be activity "constituting debt collection under the Act."

The response to the order to show cause was indeed a response to Elizabeth's allegations about restraints on her accounts and did not demand or seek payment.  However, the response also

was a part of and occurred in a legal proceeding instituted by Defendants for only one purpose-to obtain payment from Elizabeth Atwood.

In fact, as the Seventh Circuit stated in <u>Ruth v. Triumph P'ships</u>, 577 F.3d 790, 798 (7th Cir. 2009), "[t]he only relationship the defendants had with the plaintiffs arose out of [the defendant's] ownership of the plaintiffs' defaulted debt.".  This was one factor in the court in <u>Ruth</u> holding that "we believe that any reasonable trier of fact would conclude that the notice was sent in connection with an attempt to collect a debt."  The notice being discussed in <u>Ruth</u> was a letter which in and by itself would not necessarily be deemed to be in connection with the collection of any debt.  It also happened to be in the same envelope as the collection letter.  Just like in <u>Ruth</u>, the only relationship between that of Elizabeth Atwood and Defendants was that of consumer and debt collector.  Just like in <u>Ruth</u>, based on this relationship and the response being part of and occurring in a legal proceeding instituted by Defendants for only one purpose-to obtain payment from Elizabeth Atwood, the response was in connection with the collection of any debt.

In response to the order to show cause, Defendants could have taken actions other than submitting to the court a response to the order to show cause.  Defendants could have investigated properly the facts and then could have taken actions that would have contemporaneously ended the restraints on her bank accounts and terminated the pending debt collection lawsuit without any further court appearances by Elizabeth Atwood in regard to the pending debt collection lawsuit.

Instead, Defendants' response did the following:

(1) misrepresented the facts about Defendants' client restraining her accounts,

(2) resulted in the continuation of the restraints on her accounts for an additional three weeks,

(3) resulted in the continued existence of the debt collection lawsuit which long ago should have been terminated based on the expiration of the statute of limitations,

20

(4) required Elizabeth Atwood to appear in court as part of the pending debt collection lawsuit and prove that it actually was Portfolio Recovery Associates, LLC that was restraining her accounts, and

(5) resulted in the plaintiff in this action having to appear in court as part of the pending debt collection lawsuit and have to communicate with an attorney representing Portfolio Recovery Associates, LLC or at the very least face an attempt to communicate with her by an attorney representing Portfolio Recovery Associates, LLC.

As stated above, the response to the order to show cause resulted in among other things the continuation of the restraints on her accounts for an additional three weeks and the restraint did not end until after Elizabeth Atwood went to court.  In fact, as alleged in the Amended Complaint, even in court, the attorney for Defendants during a conference with the court's law clerk and Plaintiff merely gave their response to the Order To Show Cause to the court's law clerk.  He also verbally maintained the position in the response that they did not place the lien on the accounts.

A few weeks ago, on August 8, 2014, the Sixth Circuit in <u>Currier v. First Resolution Inv. Corp.</u>, No. 13-5943 (6th Cir., 2014) explained how a lien amounts to an attempt to collect a debt and is in connection with an attempt to collect a debt:

> "The very point of a lien is that it coerces the property holder to settle a debt in order to maintain rights in the property. *See* "Lien," Black's law Dictionary (9th ed. 2009) (A lien is "[a] legal right of interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied."). The least sophisticated consumer, indeed most consumers, would regard filing a lien on the debtor's home using a state procedure that does not authorize such action as an "unfair or unconscionable means to collect or attempt to collect" the debt. 15 U.S.C. § 1692f."

See also  <u>McCollough v. Johnson, Rodenburg & Lauinger,</u> *LLC,* 637 F.3d 939, 952 (9th Cir.2011)

("The district court correctly held that [the defendant's] service of false requests for admission

violated the FDCPA as a matter of law."); and Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 228, 230–32 (4th Cir.2007) (holding that the FDCPA applied to allegedly erroneous statements made in interrogatories and a summary judgment motion during the course of a state-court debt-collection suit).

Defendants also cite Simon v. FIA Card Servs., N.A., 732 F.3d 259 (3rd Cir., 2013) and then set forth the following quote: "[f]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." First, this quote was the court in Simon quoting Gburek v. Litton Loan Servicing LP 614 F.3d 380 (7th Cir.2010). Once again, Defendants take only part of a court's ruling and fail to set forth the complete relevant portion.

After the above quote, the Simon court set forth another quote from Gburek: "[A] letter that is not itself a collection attempt, but that aims to make ... such an attempt more likely to succeed, is one that has the requisite connection." Even if the response to Elizabeth Atwood's order to show cause was "is not itself a collection attempt", the only possible result of the response was to make "an attempt more likely to succeed" since Defendants' response did the following:

   (1) misrepresented the facts about Defendants' client restraining her accounts,

   (2) resulted in the continuation of the restraints on her accounts for an additional three weeks,

   (3) resulted in the continued existence of the debt collection lawsuit which long ago should have been terminated based on the expiration of the statute of limitations,

   (4) required Elizabeth Atwood to appear in court as part of the pending debt collection lawsuit and prove that it actually was Portfolio Recovery Associates, LLC that was restraining her accounts, and

   (5) resulted in the plaintiff in this action having to appear in court as part of the pending debt

22

collection lawsuit and have to communicate with an attorney representing Portfolio Recovery Associates, LLC or at the very least face an attempt to communicate with her by an attorney representing Portfolio Recovery Associates, LLC.

In fact, one natural interpretation of Defendants' response would be that it invited Elizabeth Atwood to contact them to further discuss the case. One portion of the response to her order to show cause reads as follows:

> "A review through the file shows that Plaintiff is restraining no bank accounts. If Defendant shows that this is in error, and that it is indeed Plaintiff restraining the account and not someone else, Plaintiff will release the account, however, Plaintiff's records show that no account is being restrained."

By writing in their response that if Elizabeth Atwood shows that their client actually is the one restraining her accounts then their client will release her accounts; Defendants are inducing Elizabeth Atwood to contact them and as previously explained, the only relationship between the parties is that of consumer and debt collector.

It is important to note that Defendants' motion ignores this portion of the response which specifically is quoted in and forms a basis for the Amended Complaint. Because Defendants' motion ignores this portion of the response, Defendants' motion mischaracterizes the response. This actually makes Defendants' motion virtually inapplicable to the actual response at issue.

Defendants' motion also ignores at least three allegations in the Amendment Complaint which definitively shows, at least for the purpose of deciding a motion to dismiss, that "an animating purpose of the communication [was] to induce payment by the debtor" and/or shows that the "aim [was] to make ... such an attempt more likely to succeed". The allegations are as follows:

(1)     Paragraph 68 of the Amended Complaint alleges that "On February 13, 2014, an employee of C&S prepared Atwood's file for the February 18, 2014 court appearance in

23

regard to the Order To Show Cause.  This preparation included the preparation of a summary of the permissible settlement parameters.";

(2)      Paragraph 69 of the Amended Complaint alleges that "On February 18, 2014, Atwood appeared in court.  An attorney was present from both C&S and F&G.  Atwood was called into a hearing room where she was joined by a C&S attorney and the court's law clerk.  The law clerk requested that Atwood explain why she requested an Order To Show Cause on a closed case and against C&S.   After she explained her reasons the C&S attorney presented a written response to the Order To Show Cause to the law clerk.    Atwood asked the C&S attorney how could this happen and he replied that C&S did not initiate the lien against her account."; and

(3)      Paragraph 68 of the Amended Complaint alleges that "On February 11, 2014, after its receipt of Atwood's Order To Show Cause, C&S asked Portfolio Recovery Associates, LLC for permission to reopen Atwood's file and oppose and defend the Order To Show Cause.  C&S received permission from Portfolio Recovery Associates, LLC to reopen Atwood's file and oppose and defend the Order To Show Cause.  At this point, C&S once again became the attorney for Portfolio Recovery Associates, LLC in the State Action."

Again, just like in Ruth, the only relationship between the parties is that of consumer and debt collector.

**FAILURE TO TAKE ACTION/OMISSIONS**

Defendants incompletely and inaccurately characterize the Third, Fourth and Eighth Cause of Action as nothing more than them failing to communicate to their own client.  Actually, each of the causes of action has specific allegations regarding actions taken by Defendants which resulted in or contributed to the harm suffered by Elizabeth Atwood.  These alleged actions are in addition to

24

the alleged omissions.  A failure to communicate to its client is just one of the omissions alleged in the Amended Complaint.

The main action set forth in the Third and Fourth Cause of Action is Defendants' signing and delivering the Consent To Change Attorney to F&G.  The Third Cause of Action is based on this action being a false, deceptive or misleading communication in connection with the collection of a debt.  The Fourth Cause of Action alleges that Defendants concealed information at various times including when they signed and delivered the Consent To Change Attorney to F&G.

These causes of action are not premised on allegations that Defendants should have communicated to their client out of the blue about Elizabeth Atwood's file.  The Amended Complaint alleges events which created an obligation by Defendants to communicate to their client and others.   These causes of action are premised on a debt collector's obligations under the FDCPA before taking an action such as signing and delivering a Consent To Change Attorney to a new attorney knowing the new attorney will attempt to collect the debt.

Defendants' motion does not address the allegation in the Third Cause of Action that Defendants' signing and delivering the Consent To Change Attorney to F&G is a false, deceptive or misleading communication in connection with the collection of a debt.  Defendants' motion does not address the allegation in the Fourth Cause of Action that concealing information at various times including when they signed and delivered the Consent To Change Attorney to F&G is a violation of the FDCPA.

Since Defendants have not contested the aforementioned allegations, Defendants have waived their right to challenge these portions of the Third and Fourth Cause of Action.     Even if they had contested whether or not these allegations amount to a cause of action for violations of the FDCPA, prior case law along with the purpose of the FDCPA supports a finding that the Third and

Fourth Cause of Action as alleged are sufficient to survive a motion to dismiss.

The case of Magrin v. Unifund CCR Partners, Inc., 2002 WL 31804268, 52 Fed.Appx. 938 (9th Cir. 2002), certiorari denied 538 U.S. 980 (2003) is similar to the violations alleged in the Third and Fourth Cause of Action.   In Magrin, the plaintiff sued both Unifund and The Credit Store. Magrin alleged that Unifund had gone to court to try to collect a debt from him.   The case against him got dismissed; and afterward, Unifund sold the debt to The Credit Store without telling The Credit Store of the existence of the prior lawsuit or the results.   The district court granted the defendants' motion to dismiss for failure to state a claim.   The Ninth Circuit determined that Magrin did set forth a claim and reversed and remanded.   The Ninth Circuit found as follows:

> "Thus, a consumer states a valid claim for relief under the Act when he alleges that a debt collector has made a false representation as to the legal status of a debt in connection with the sale, transfer or assignment of a debt to another debt collector with the knowledge that the purchaser, transferee or assignee intends to initiate or continue attempts to collect the debt".

The fact that Elizabeth Atwood's case involves one debt collector signing and delivering a Consent To Change Attorney or having a debt buyer take back a file from a debt collector rather than a sale, transfer or assignment is a distinction without a difference.   Both instances involve a second debt collector taking over the attempt to collect the debt from the first debt collector.   Both instances involve the first debt collector knowing that another debt collector was going to take over attempting to collect the debt.   Both instances involve the first debt collector not telling the second debt collector, directly or through their mutual client, about problems which occurred during the first attempt to collect the debt.   Both instances involve these omissions resulting in actions by the second debt collector that resulted in a violation of the consumer's rights under the FDCPA.

As regards FDCPA liability for failing to take certain actions such as notifying your client or a second debt collector of a relevant fact effecting the legal right to continue to attempt to collect a

debt, in <u>Coble v Cohen & Slamowitz, LLP</u>, 824 F.Supp.2d 568 (S.D.N.Y., 2011) the court held as

follows in denying these same Defendants' motion to dismiss:

> "Plaintiffs have sufficiently alleged that defendants were on notice that any
> default judgments based on the Midlantic affidavits were potentially
> fraudulent as of 2006. They have also plausibly alleged that by failing to
> investigate the fraudulent practices of its process service company and
> continuing to enforce those judgments, defendants violated the FDCPA and
> concealed that violation in the process."

Defendants allege without any supporting case law that the alleged omissions amount to

nothing more than a possible malpractice issue between it and its client.   However, there is no

difference between the omission in <u>Coble</u> of "failing to investigate the fraudulent practices of its

process service company" and the omissions alleged and not denied in the Third and Fourth Cause

of Action in this case of failing to notify their client or the second debt collector that there was no

judgment, that the State Action had been dismissed by operation of law, that the statute of limitations

on legal action to collect the debt had expired, and that the restraint on the bank accounts was done

without any legal basis.  Both omissions resulted in the improper continuation of debt collection

lawsuit and the improper enforcement of a judgment.   There is no reason why an act of legal

malpractice by a debt collector also cannot be an omission in violation of the FDCPA.

A prior portion of this opposition already discussed the case of <u>Currier v. First Resolution</u>

<u>Inv. Corp.</u>, No. 13-5943 (6th Cir., 2014) and the violation of the FDCPA as a result of a failure to

eliminate an invalid judgment lien.  Based on the reasoning in <u>Currier</u>, signing and delivering a

Consent To Change Attorney to a second debt collector knowing that it would continue the debt

collection attempts and concealing information that would have informed the second debt collector

and/or their client of a problem with the second dent collector attempting to collect the debt through

the State Action is a violation of the FDCPA as alleged in the Third and Fourth Cause of Action.

1692f is one of the sections the Third and Fourth Cause of Action alleges that Defendants have violated.  Back in 2010, the United States Supreme Court made clear the extremely wide scope of the FDCPA.  It held in <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA</u>, 559 U.S. 573, 587, 130 S. Ct. 1605, 1615 (2010) that the FDCPA is a consumer protection statute that "imposes open-ended prohibitions on, inter alia, false, deceptive, or unfair debt-collection practices."    In July of this year, the 11th Circuit reiterated its opinion regarding the meaning of unfair and unconscionable as set forth in 1692f:

> "The plain meaning of 'unfair' is 'marked by injustice, partiality, or deception. … Further, "an act or practice is deceptive or unfair if it has the tendency or capacity to deceive. … We also explained that the term 'unconscionable' means 'having no conscience'; 'unscrupulous'; 'showing no regard for conscience'; 'affronting the sense of justice, decency, or reasonableness."   <u>Crawford v. LVNV Funding, LLC</u>,  No. 13-12389 (11th Cir., July 10, 2014).

It certainly is unfair, unjust, unconscionable, unscrupulous, indecent and unreasonable for one debt collector to sign a Consent To Change Attorney and deliver it to a second debt collector without revealing the facts regarding the collection action when the first debt collector knows or should have know that there is an issue that would result in a violation of the FDCPA upon the second debt collector attempting to collect the debt.  The FDCPA's purpose easily could be thwarted if it were not interpreted to hold a debt collector liable for creating a situation where a subsequent debt collector or its client attempts to collect a debt in violation of the FDCPA.  While the second debt collector should have their own obligations under the FDCPA upon receipt of a file, to fulfill the purpose of the FDCPA, the first debt collector also must have obligations to convey to the second debt collector all relevant information concerning the file.

## CONCLUSION

As shown above, rather than making arguments based on the actual facts and the actual contents of the Amended Complaint or making arguments supported by case law which actually is applicable to this case, overall Defendants' motion does the following:

    (1)  Makes arguments without any attempt to support them with case law;

    (2)  Quotes a sentence or a portion of a case and uses that quote to claim the case supports their argument without explaining the actual nature or facts of the case; but the quote is taken out of context and a reading of the entire case reveals that the case is inapplicable or actually supports Plaintiff's case;

    (3)  Ignores applicable legal theories;

    (4)  Ignores or mischaracterizes the facts actually set forth in the Amended Complaint; and

    (5)  Ignores causes of action.

Defendant has not set forth any valid argument or case supporting its motion to dismiss.  Meanwhile, Plaintiff's opposition has set forth numerous cases which demonstrate that based on the alleged facts taken as true for the purposes of this motion, each cause of action set forth in the Amended Complaint sets forth as valid and viable claim.

Dated:      September 4, 2014

/s/ Mitchell L. Pashkin                              /s/ Jesse Langel
Mitchell L. Pashkin, Esq.                           Jesse Langel, Esq. (JL-7079)
Attorney For Plaintiff                               The Langel Firm
775 Park Avenue, Suite 255                   Attorney For Plaintiff
Huntington, NY 11743                        225 Broadway, Suite 700
(631) 692-7709                              New York, NY 10007
                                      (646) 290-5600

29